IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

JESSICA MURRAY,                        )
                                       )
                    Plaintiff,         )        **CIVIL ACTION**
                                       )
v.                                     )        No. 07-1334-MLB
                                       )
RANS, INC.,                            )
also known as RANS COMPANY,            )
                                       )
                    Defendant.         )
_____)


## MEMORANDUM AND ORDER

This matter comes before the court on defendant RANS, Inc.'s ("RANS'") motion for summary judgment. (Docs. 13, 14.) Plaintiff Jessica Murray has responded (Docs. 15, 16) and RANS has replied (Doc. 18).

Plaintiff's case seeks enforcement of a default judgment and damages award entered against RANS in Ireland. (Doc. 1.) Shortly after the case was filed, the parties agreed to forgo a scheduling conference and discovery until this court resolved the issue of the Irish court's personal jurisdiction over RANS at the time it entered that default judgment. (Doc. 6.) The parties have stipulated facts for use in the summary judgment motion now before the court. (Doc. 12.)

RANS' motion for summary judgment based on personal jurisdiction (Doc. 13) is GRANTED for the reasons stated more fully herein.

I.  **STIPULATED FACTS**[1]

A.  **RANS' Business Dealings**

RANS was a corporation duly organized and existing pursuant to the laws of the State of Kansas until it was dissolved as of June 30, 2007.[2]  RANS' principal place of business was in Hays, Ellis County, Kansas.  RANS was in the business of manufacturing and selling experimental aircraft, experimental-aircraft kits, and other aircraft parts and accessories.  RANS sold its experimental-aircraft kits through various dealers, including in some places in Europe.  RANS had one such dealer in England.

RANS never had any dealers in Ireland or Northern Ireland ("Ireland") at any time.  RANS never had any plants, locations, outlets, employees, agents, or other affiliations in Ireland of any nature at any time.  RANS never conducted any business in Ireland. It never sold an experimental aircraft, aircraft kit, nor any other part, accessory, or other item into Ireland.  RANS never received income from any source in Ireland, and it never paid any taxes in Ireland.

In May, 1997, RANS established an internet website that contained information on its products.  The RANS website did not offer RANS products for purchase through the internet, nor did it offer any other

---

[1]  Most of the parties' stipulated facts have been included verbatim.  However the court has left out portions of stipulated facts that it found were not relevant to its analysis, and has re-ordered the stipulated facts to tailor them to the analysis below.

[2]  RANS Designs, Inc., a separate legal entity, is presently in the business of manufacturing and selling experimental-aircraft kits and other aircraft parts and accessories.  Randy Schlitter is the resident agent for RANS Designs, Inc.

form of commerce until March 2000, when an online "store" was added to the website that offered products for order and purchase.  Although the RANS website has been accessible to persons in Ireland, RANS has never sold a product to any person in Ireland at anytime.

**B.  The May 30, 1998 Accident**

On May 30, 1998, a 1992 S-12 XL Airaile ("the S-12 Airaile"), flown by Holger Schiller, with Fionn Murray as passenger, crashed in County Sligo, Ireland.  Schiller and Murray died as a result of injuries sustained in the crash.  Schiller and Murray were residents of Ballinfull, County Sligo, Ireland.  Plaintiff is the daughter of Schiller, and the widow of Murray.  She is also a resident of Ballinfull, County Sligo, Ireland.

RANS originally sold the unassembled S-12 Airaile as a box of hundreds of pieces to German citizens, Cord Von Bulow and Alfred Roeben, on or about September 11, 1992, who presumably then assembled those pieces into a completed recreational airplane.  This sale took place through RANS' dealer in Germany.  RANS did not receive any notice that the S-12 Airaile had been sold or that ownership had otherwise transferred from Von Bulow and Roeben until some time after the May 30, 1998 accident.[3]

**C.  The Irish Lawsuit**

Plaintiff filed a lawsuit against RANS in Ireland ("the Irish Lawsuit") for the deaths of Schiller and Murray on or about May 28, 2001.  In early 2002, RANS received notice that the Irish Lawsuit had

---

[3] The parties' stipulation does not state whether Von Bulow and Roeben sold the aircraft to Schiller and Murray or, for that matter, when and how Schiller and Murray acquired the aircraft.

been filed when the Ellis County Sheriff's Department served Randy
Schlitter, who was the resident agent for RANS.  On or about May 20,
2002, RANS sent a letter to the Irish court indicating that it had
received a Notice of Summons, but did not have the funds or resources
to hire a lawyer abroad in Ireland.  RANS' May 20, 2002, letter also
stated in part:

> We deny any wrongdoing in the deaths of Mr. Fionn
> Murray or Mr. Holger Schiller.  At this time we
> have no funds to hire an attorney to represent us
> in Ireland.  We must ask the court to let us
> represent ourselves.  Please explain what is
> required of us and keep us informed of any court
> actions.

On or about May 31, 2002, the Irish court sent a letter to RANS
acknowledging receipt of RANS' May 20, 2002 letter, and stating that:
"If you intend to defend this action you must first instruct a
[lawyer] within this jurisdiction to act for you.  If you fail to
enter an appearance to the action the Plaintiff may proceed for
judgment against you in default of appearance."

On or about July 9, 2002, Irish counsel for plaintiff in the
Irish Lawsuit wrote RANS, indicating that he had not received any
response from RANS to two earlier letters he had sent concerning his
client's claims (on May 29, 2001, and August 14, 2001).  Irish counsel
for plaintiff further advised RANS in this letter as follows:

> We note that you deny wrong doing and maintain
> that you will be seeking to represent yourselves.
> This again is a matter for yourselves. . . .
> [Y]ou are required within five weeks from the
> receipt of the Notice by you . . . to Defend the
> action if you so intend to do so, by calling an
> Appearance to be entered by you at the Central
> Office, Four Courts, Dublin.  We note that the
> Notice of Summons was served on you on the 22nd
> of April, 2002, and that the five week period has
> expired.  In these circumstances, please note

-4-

>       that it is our intention to institute a Motion
>       for Judgement in default of Appearance within the
>       next twenty one days should you continue to fail
>       to deliver an Appearance to the said proceedings.

As of November 20, 2002, no entry of appearance on behalf of RANS had been filed in the Irish Lawsuit, and RANS had not responded to the July 9, 2002 correspondence from plaintiff's Irish counsel. Accordingly, plaintiff's Irish counsel filed an Affidavit and Notice of Motion with the Irish court on November 21, 2002, seeking an order of default judgment. Plaintiff's Notice of Motion indicated that plaintiff would seek her default judgment on January 13, 2003, or as soon as possible thereafter. Plaintiff's Affidavit, Notice of Motion, and Statement of Claim were served on RANS on December 12, 2002.

On or about January 13, 2003, RANS sent a letter to the Irish court again indicating, among other things, that it did not have sufficient resources to hire a lawyer in Ireland. RANS' January 13, 2003 letter stated in part:

>       Our experience with international law is
>       extremely limited and without resources to hire
>       a representative in your country we have been
>       left to the total mercy of your court. In an
>       earlier response we asked that we be able to
>       represent ourselves and it seems that in Ireland
>       this cannot be the case?? We must beg the court
>       to allow us some time if we must hire a solicitor
>       in your country. There have been no funds to do
>       so. . . . We must take exception to many things
>       in the Statement of Claim and pray that you will
>       at least consider these matters as you make a
>       judgment simply because we cannot afford to
>       defend ourselves. . . . Again, we beg you to
>       give an extension of time so that we can get
>       adequate representation.

On or about January 27, 2003, the Irish court sent a letter to RANS acknowledging receipt of its January 13, 2003 letter. The Irish court's January 27, 2003 letter stated that the court was not in a

position to correspond with RANS, that a default judgment hearing had been set, and that if RANS wished to defend the pending litigation, it must obtain a lawyer in Ireland to represent it.  On February 3, 2003, the Irish court entered an order giving RANS six weeks to enter an appearance in the Irish Lawsuit.  Plaintiff's Irish counsel provided RANS with written notification of the same in early February 2003.

After no action from or appearance by RANS, on or about November 10, 2003, Irish counsel for plaintiff filed a Motion and Affidavit requesting default judgment against RANS.  Plaintiff's counsel indicated in the Affidavit that no appearance in the Irish Lawsuit had ever been made by RANS.  RANS was personally served by the Ellis County Sheriff's Department with plaintiff's Motion and Affidavit in support of default judgment.

RANS never retained a lawyer in Ireland and on December 15, 2003, the Irish court entered default judgment against RANS for failure to enter an appearance and defend the Irish Lawsuit.  Following the Irish court's December 15, 2003 entry of default judgment against RANS, RANS received notice of additional proceedings in the Irish Lawsuit in 2005 and 2006 to assess damages and costs.  RANS likewise did not contest or participate in those proceedings in any manner.

**D.  The S-12 Airaile**

The aircraft kits manufactured and sold by RANS, including the S-12 Airaile, were designed to ultimately be assembled into small, recreational airplanes designed for short trips.  They accommodate only one pilot and one passenger maximum, and they are not intended or suited for long-distance travel.  With the fuel tanks and Rotax 582

-6-

engine that the S-12 Airaile was equipped with, it would generally have a maximum single-flight range of about 100 to 195 miles, and 2.1 to 2.6 hours, depending upon wind conditions.  In March 1990, the RANS S-12 Airaile model took to the air and soon became an icon of modern ultra-light trainers.  As of 2006, 1000 S-12 Airaile kits had been shipped and at least 700-900 planes were operating worldwide.

Measuring between Germany and Ireland's cities that are closest in proximity compared with their other more distant cities, Germany and Ireland are about 600 to 900 miles apart, and separated by two bodies of water, the English Channel and the Irish Sea.  Tipperary is located in Tipperary County, Ireland.  The island comprised of Ireland and Northern Ireland is approximately the same size as the State of Maine.  Approximately 87.4 miles separate Ireland's capitol, Dublin, from Belfast, the largest city in Northern Ireland.  Approximately 66.9 miles separate Dublin from Holyhead, a community located on the western coast of England.  Approximately 190.8 miles separate Dublin from Birmingham, an English city with one million residents.

As of May 30, 1998, RANS had no notice of any sale, import, or other travel of any nature of this S-12 Airaile or any other RANS kit or airplane into Ireland.  By Irish standards, the S-12 Airaile was a unique type of aircraft.  There were no aircraft even remotely similar to the S-12 Airaile flown in Ireland as of May 30, 1998.

Prior to receiving plaintiff's input related to this factual stipulation for the present lawsuit in the District of Kansas, this S-12 Airaile was the only RANS kit or airplane that RANS was aware had ever been in Ireland at any time.  To RANS' knowledge, the airplanes that were the final products of its kits are not approved for legal

-7-

flight in Ireland.  The RANS model S-12 Airaile was approved for legal flight in England only as of about two years ago.  To <u>plaintiff's knowledge</u>, the airplanes that were the final products of RANS kits are not prohibited from flight in Ireland.

As of the date of the accident, May 30, 1998, the S-12 Airaile was not registered in Ireland.  It maintained its German registry, as identified by its registration identifier "D-MLAB."  To be legally registered in Ireland, the S-12 Airaile was required to have a valid "Certificate of Airworthiness" issued in either Ireland or the exporting state (in this case, Germany).  The S-12 Airaile's Certificate of Airworthiness from Germany had expired as of April 30, 1998.  There is no evidence that a Certificate of Airworthiness extension had been sought or granted after April 30, 1998, and prior to the accident on May 30, 1998.

In 2007 and 2008, there are several examples of RANS' aircraft located in Ireland:

- As of April 4, 2008, MicroCom, an aircraft communications firm in Ireland, has built intercom systems for various airplanes, including RANS' S-5, S-6, and S-7 models.

- According to a poster to an internet forum, as of December 3, 2007, the Letterkenny Flying Club, located in Donegal County, Ireland, utilized an airport hangaring approximately 16 to 20 microlight aircraft, including X-air, Icarus, RANS, and others. Photographs on such club's website as of April 4, 2008, depict RANS' S-4 and S-6 models.

- According to two posters to an internet forum, as of March 2008, one poster had flown a RANS S-6 "in Letterkenny quite a lot," and another stated: "There are loads of secondhand x-airs and RANS S-6's for sale out there.  A good example will keep you flying for years.  I also know of a RANS S-6 for sale in Tipperary [as of March 13, 2008]."

## II.   ANALYSIS

The Due Process Clause of the Fourteenth Amendment dictates that a court must have jurisdiction over a defendant for that court's judgment to be enforceable against the defendant. Kulko v. Superior Court, 436 U.S. 84, 91 (1978) ("It has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant."). A plaintiff has the burden of establishing personal jurisdiction over a defendant. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1069 (10th Cir. 2008).

To exercise specific jurisdiction,[4] due process requires that a nonresident defendant purposefully avail himself of minimum contacts with the forum, such that it would be reasonable to require the defendant to defend the suit in the forum state. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985); Kulko, 436 U.S. at 92 (stating that a defendant must 'have certain minimum contacts with [the forum State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice') (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Purposeful availment of minimum contacts means that a defendant's

---

[4]   In the alternative, a court could exercise general jurisdiction over a defendant, a prospect that is not urged here. When a defendant's activities toward a forum are "continuous and systematic," then the court has general jurisdiction over that defendant over all claims, even those unrelated to its contacts. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415 (1984).

contacts are not random, fortuitous, or attenuated, and are not based on the unilateral activity of another party or third person.  Rather, the contact must be deliberate and significant, or must result from a continuing obligation to residents of the forum.  Burger King Corp., 471 U.S. at 475-76.  The Supreme Court has stated that a forum "does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" and those products subsequently injure forum consumers.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980).

Once a court has determined that a defendant has purposely established minimum contacts with a forum, then the court must consider the contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice."  International Shoe Co., 326 U.S. at 320. Thus, courts in "appropriate case[s]" may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." World-Wide Volkswagen Corp., 444 U.S. at 292.

RANS' did not purposefully avail itself of minimum contacts with Ireland.  RANS is a Kansas corporation, with its principal place of business in Kansas.  RANS had absolutely no business affiliations or relationships in Ireland; no plants, dealers, employees, or agents.

-10-

RANS never conducted business with anyone located in Ireland, never received any income from Ireland, and never paid taxes to Ireland.

RANS sold the S-12 Airaile kit that was ultimately involved in the accident, but it was sold to German citizens by a German dealer. RANS had no control over any subsequent sale of the S-12 Airaile. RANS did not ship or sell its aircraft kits, or any products, into Ireland, and had no dealers in Ireland. RANS did not receive notice that ownership of the S-12 Airaile had been transferred from the German purchasers until <u>after</u> the May 30, 1998 accident. RANS cannot be held accountable for Schiller and Murray's decision to operate the S-12 Airaile in Ireland. See <u>Doe v. Nat'l Med. Servs.</u>, 974 F.2d 143, 146 (10th Cir. 1992) (stating that the unilateral acts of a third party cannot establish a link with a forum and that the defendant must be the one to purposefully direct its activities to the forum).

In addition, there was no reason for RANS to know that the S-12 Airaile could ultimately end up in Ireland, regardless of the known flying distance capability of the aircraft. The S-12 Airaile was a unique aircraft and there were no aircraft similar to the S-12 Airaile flown in Ireland in 1998. The S-12 Airaile was not registered in Ireland at the time of the accident, and in fact, was still registered in Germany at the time of the accident. The Certificate of Airworthiness on the S-12 Airaile had already expired and, as far as RANS knew, the S-12 Airaile could not have legally become registered in Ireland.

Not only were there no contacts with Ireland that RANS knew of or should have known of, it would also "offend traditional notions of fair play and substantial justice" for an Irish court to exert

-11-

jurisdiction over RANS.  RANS had no representative in Ireland - no warehouse, dealer, employee, or agent.  It had no counsel in Ireland. It would be unreasonable to expect RANS to defend a lawsuit in Ireland based on an aircraft entering into Ireland through no action of RANS, when that action is unforeseeable by RANS.

This analysis comports with binding personal jurisdiction precedent.  See Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 114 (1987) (determining, in a case in which no majority consensus was made on the existence of minimum contacts, that jurisdiction over an international defendant in California was unreasonable because of the "severe" burden on the international defendant and the fact that California had no connection to the transaction or the plaintiff); World-Wide Volkswagen Corp., 444 U.S. at 295-96 (finding that personal jurisdiction was not established in Oklahoma over a New York defendant when the New York defendant sold the product to the plaintiffs in New York and they happened to be injured by the product while traveling through Oklahoma; the New York defendant carried on no activity, closed no sales, performed no services, nor solicited any business in Oklahoma).

Plaintiff's response attempts to counter the above, well-established law, with three arguments.  First, plaintiff argues that RANS waived any personal jurisdiction objection, because of its "knowing inaction and failure to assert any jurisdictional defense whatsoever over the course of several years following personal service of process." (Doc. 16 at 5.)  This argument fails, however, because the law is clear that a defendant is free to not participate in a judicial process and challenge the court's action in a collateral

-12-

proceeding.   Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 706 (1982) ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding.").

Second, plaintiff seems to contend that because she has satisfied the forum's statutory basis for jurisdiction, the court has personal jurisdiction over RANS. (Doc. 16 at 9-13.)  The law requires more, however, and plaintiff must also comply with the constitutional requirements for personal jurisdiction.  Intercon, Inv. v. Bell Atl. Internet Sols., Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (noting that a forum's personal jurisdiction requirements and due process requirements must be satisfied).

Third, plaintiff argues that she has shown RANS' had minimum contacts with Ireland such that personal jurisdiction over RANS satisfied due process.  (Doc. 16 at 13-16)  Plaintiff contends that the website mentions of RANS' aircraft being in Ireland in 2007 and 2008 shows RANS' contact with Ireland.  However, plaintiff is arguing for specific jurisdiction over RANS in Ireland[5] and for specific jurisdiction, there must be both minimum contacts and the underlying action must arise out of or relate to those minimum contacts. Trujillo v. Williams, 465 F.3d 1210, 1218 (10th Cir. 2006) ("The minimum contacts necessary for specific personal jurisdiction may be established where "the defendant has 'purposefully directed' its

---

[5] Plaintiff makes no argument that RANS' activity in Ireland was "continuous and systematic," which would be required for a showing of general jurisdiction.  See supra note 3.

activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum."). The existence of RANS' aircraft in Ireland in 2007-2008, nine to ten years after the underlying accident, is irrelevant to the question of whether RANS was subject to personal jurisdiction based on an incident on May 30, 1998. The underlying action cannot arise out of or be related to those 2007-2008 contacts.

Plaintiff also contends that RANS' website, which was viewable by Irish citizens, is evidence of minimum contacts sufficient to support personal jurisdiction over RANS in Ireland. This argument fails because the facts show that the website was merely passive--it contained information about its products but did not offer products for sale. The Tenth Circuit has held that a passive website merely containing information, and devoid of commercial activity, is not enough for a forum to exercise personal jurisdiction over a defendant. Soma Med. Int'l v. Standard Chartered Bank, 196 F.3d 1292, 1299 (10th Cir. 1999) (finding that a defendant who had a passive website that did "little more than make information available" had not subjected itself to personal jurisdiction because it was not purposeful availment of the benefits of doing business in the forum); see also Fidelity & Cas. Co. of New York v. Philadelphia Resins Corp., 766 F.2d 440, 441-43, 446-47 (10th Cir. 1985) (holding that advertising in a trade publication with presumably national circulation was insufficient to hold that a Pennsylvania corporation could be subject to personal jurisdiction in Utah in a case despite the fact that the defendant's product was sold to an Arkansas resident who told the

-14-

defendant he would be using the product in the "Rocky Mountain region" and subsequently took the product to Utah).

To show minimum contacts, plaintiff finally alleges RANS had a "dealership parts and distribution network in the United Kingdom." The stipulated facts show that RANS had one dealer in England and that the S-12 Airaile was purchased from a dealer in Germany.  These dealerships have nothing to do with contacts in Ireland.  If a Kansas aircraft manufacturer had dealerships in New York and Maine, it would not subject them to suit in Pennsylvania.

RANS has failed to carry its burden to show that personal jurisdiction over RANS existed in the Irish Lawsuit.  As a result, RANS' motion for summary judgment must be granted.

## III.  CONCLUSION

RANS' motion for summary judgment based on personal jurisdiction (Doc. 13) is GRANTED for the reasons stated more fully herein.  The clerk is directed to enter judgment for RANS pursuant to Rule 58.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp, 810 F. Supp. 1172, 1174 (1992).  The response to any motion for reconsideration shall not exceed 3 double-spaced pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this  9th  day of July, 2008, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE